**SO ORDERED.**

**SIGNED this 21 day of May,2014.**

*Stephani A. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

                                          CASE NO.

BISSETT PRODUCE, INC.              13-00713-8-SWH
        DEBTOR


DEREK & MATTHEW BISSETT FARMS,
BRANTLEY FARMS, INC., ERW FARMS, LLC,      ADVERSARY PROCEEDING NO.
NICHOLS & NICHOLS FARMS, INC., and ROCK      13-00094-8-SWH-AP
RIDGE FARMS PARTNERSHIP,
        Plaintiffs,

        v.

BISSETT PRODUCE, INC. and AGCAROLINA
FARM CREDIT, ACA,
        Defendants.

### ORDER ALLOWING MOTIONS TO DISMISS

     This matter is before the court on motions to dismiss the complaint filed by the debtor-

defendant, Bissett Produce, Inc. ("Bissett"), and defendant AgCarolina Farm Credit, ACA

("AgCarolina"). A hearing took place in Raleigh, North Carolina, on November 5, 2013, at the close

of which the court took the matter under advisement. Pursuant to the court's request in an order

entered on March 26, 2014, the parties submitted supplemental memoranda expanding on their

analyses of the relevant provisions under the Perishable Agricultural Commodities Act ("PACA").

For the reasons that follow, both motions to dismiss will be allowed.

## JURISDICTION and STANDARD OF REVIEW

The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (K), which this court may hear and determine, and the proceedings arise in and are related to defendant/debtor Bissett's chapter 11 bankruptcy case.

Pursuant to Rule 12(b)(6), defendants seek dismissal of the complaint for failure to state a claim upon which relief may be granted. Fed. R. 12(b)(6). To survive a 12(b)(6) motion, the factual allegations of a complaint must "be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also Angell v. BER CARE, Inc.(In re Careamerica, Inc.), Adv. Pro. No. L-08-00174-8-AP (Bankr. E.D.N.C. July 23, 2009) (setting out a detailed analysis of Twombly and Iqbal). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss," and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft, 556 U.S. at 678-79; see also E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175 (4th Cir. 2000). Significantly, while the truth of the *facts* is assumed, the court is not bound by "legal conclusion drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts, 213 F.3d at 180.

## STATEMENT OF THE ISSUE

Plaintiffs set out four claims in their complaint, each of which is based upon defendant Bissett's alleged preservation of, and failure to act in accordance with, plaintiffs' PACA trust rights. As previously reviewed in the court's order of March 26, 2014, the defendants' motions to dismiss originally asserted three bases upon which they believe the plaintiff produce growers failed to allege a *prima facie* claim under the PACA statutes. Specifically, defendants argued that plaintiffs failed to allege 1) that the sweet potatoes were received by Bissett acting in the capacity of a commission merchant, dealer or broker; 2) that plaintiffs were unpaid suppliers or sellers of the sweet potatoes; and 3) that plaintiffs gave the PACA notice required to preserve their trust benefits. The parties agree that to the extent the complaint may fall short regarding those first two factors, any deficiencies could be cured in an amended complaint.[1] Accordingly, the court's focus now is on the single remaining issue.

Plaintiffs acknowledge that they gave no PACA notice of any kind, at any time, to any party. Defendants contend that this conceded fact is fatal to plaintiffs' PACA claims, reasoning that both the applicable statutes and a comprehensive body of case law establish quite clearly that a "supplier" seeking to claim entitlement to PACA trust monies *must* be able to establish that it preserved its rights by giving the required notice. In response, plaintiffs insist that they were neither able nor required to give the notice required of the suppliers and sellers referenced in the statutes, by reason of their special status as "growers."

---

[1] Whether Bissett may be considered a "commission merchant, dealer or broker" is discussed below, but only to the extent necessary to give further context to the court's disposition of the PACA notice issue.

## FACTUAL BACKGROUND

In their complaint, plaintiffs allege that they are "growers" as that term is used in PACA, which defines growers as "any person who raises produce for marketing."  Complaint ¶ 5; 7 U.S.C. § 46.2(p). In their view, this term is of great significance to courts' interpretation of the notice requirements applicable to them.  The defendant debtor, Bissett, is a "growers' agent," which includes "a person operating at shipping point who sells or distributes produce in commerce for or on behalf of growers or others or whose operations may include the planting, harvesting, grading, packing, and furnishing containers, supplies , or other services."  Compl. ¶ 6; 7 U.S.C. § 46.2(q). Defendant AgCarolina is a creditor of Bissett, having entered into a secured lending relationship with Bissett prior to the petition date.  AgCarolina holds a security interest in collateral including Bissett's accounts, crops, farm products, and inventory.

In 2010 and 2011, the plaintiffs allege, they delivered sweet potatoes to Bissett, which Bissett then "stored, cured, packed, marketed, and sold ... as the growers' agent for the Growers." Compl. ¶¶ 9-13.  Plaintiffs do not provide the specific dates on which they provided the sweet potatoes to Bissett, beyond simply stating the years in which they did so, nor do they allege specific details with respect to Bissett's provision of the sweet potatoes and accompanying invoices to buyers; the subsequent failures, if any, of those buyers to remit funds due to Bissett; the demands made, if any, by Bissett to those buyers for payment of any amounts due and owing; and the demands made, if any, by the plaintiffs as against Bissett for failure to remit to the plaintiffs the funds plaintiffs now claim are due to them.  Thus, there are as yet no proffered facts upon which the court could presume that defendant Bissett successfully established a PACA trust on its *own* behalf (which would in turn depend on the buyers failing to pay Bissett within a very specific and very

short time period), much less facts sufficient to support the conclusion that Bissett established a
PACA trust on behalf of itself and on behalf of plaintiffs, which is the gravamen of plaintiffs'
action.[2]  The court will proceed for purposes of these motions only on the premise that Bissett did,
through use of the invoice method, preserve and perfect its own PACA rights with respect to the
qualifying buyers to whom it sold the sweet potatoes grown by plaintiffs.

## STATUTORY BACKGROUND

As plaintiffs point out, the commercial realities that prompted Congress to enact the PACA
legislation derive from the fact that the "process of growing, harvesting, packing and shipping
perishables is a real gamble; costs are high, capital is tied up in farm land and machinery, and returns
are delayed until the crop is sold."  H. Brooks & Co., LLC v. Yerges, 2013 WL 6665729 (Bankr.
W.D. Wis. 2013) (quoting H.R. Rep. No. 98-543 (Nov. 12, 1983) at 3, reprinted in 1984
U.S.C.C.A.N. 405, 506).  Because "sellers of perishable commodities had a need to move their
inventories quickly, they were often required to become unsecured creditors of their purchasers,
whose credit they were often unable to verify."  Nickey Gregory Co., LLC v. AgriCap, LLC,
597 F.3d 591, 594 (4th Cir. 2010).    To "remedy this burden on commerce in perishable
commodities, Congress added the provisions in § 499e, which create, immediately upon delivery,
a nonsegregated 'floating' trust in favor of sellers of the perishable commodities sold and the
products and proceeds derived from the commodities.  If the seller is not paid promptly, the trust
assets must be preserved and the seller's claims prime those of other secured and unsecured creditors
for the full amount of the claim."  Produce Alliance v. Let-Us Produce, 776 F. Supp. 2d 197, 201

---

[2] Filling those factual gaps would be essential to plaintiffs' theory of recovery; for present
purposes, however, the factual allegations the complaint does include are sufficient to allow the
court to decide the motions to dismiss.

5

(E.D. Va. 2011) (quoting <u>Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Veg. Co.</u>, 336 F.3d 410, 413 (5th Cir. 2003)).

Under PACA, "commission merchants, dealers, and brokers hold produce and any receivables from the sale of produce in trust for the benefit of unpaid produce suppliers until full payment has been made to the supplier." <u>C&G Farms, Inc. v. Capstone Bus. Credit, LLC</u>, 2011 WL 677487 at *5, *9 (E.D. Ca. 2011) (noting further that the "intended purpose of Congress in enacting the trust provision of PACA was to provide unpaid produce sellers who had delivered commodities with greater protection from risk of default by buyers, by placing them ahead of other creditors in priority"). That automatic trust is not invulnerable, though; as the statutes make clear, the unpaid supplier, seller or agent involved in the transaction "shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker," within the limited time specified by the statute. 7 U.S.C. § 499e(c)(3).

Section § 499e articulates both the purpose of the PACA trust and the means by which it is created and preserved. In its entirety, it provides:

> (1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

> (2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, *shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers*

*of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.*  Payment shall not be considered to have been made if the supplier, seller or agent receives a payment instrument which is dishonored.  The provisions of this subsection shall not apply to transactions between a cooperative association, as defined in section 1141j(a) of title 12, and its members.

(3) *The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days* (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored.  The written notice to the commission merchant, dealer or broker shall set forth information in sufficient detail to identify the transaction subject to the trust.  When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

(4)  In addition to the method of preserving the benefits of the trust specified in paragraph (3), *a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust*.  The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C. § 499(e) (emphasis added).

Thus, to become a "valid PACA trust beneficiary," a claimant (i.e., an unpaid supplier or seller of such commodities, or an agent involved in the transaction) must establish that:

(1) the produce in question must be "perishable agricultural commodities"; (2) the commodities must have been received by a commission merchant, a dealer, or broker; and (3) the claimant must have provided written notice of its intent to preserve its rights under PACA within 30 days after payment became due.

7

Carter v. Michael Cutler Co., 2013 WL 4788283 *5 (M.D.N.C. 2013) (quoting C&G Farms, 2011 WL 677487 at *5).

Again, the court's focus in these proceedings is on a single, narrow slice of the large and complicated PACA pie: That is, whether plaintiffs, as "growers" who are unpaid suppliers of sweet potatoes, were required to give notice to preserve their rights to a PACA trust just like any other unpaid supplier; or whether they are, *purely by virtue of their status as "growers,"* exempt from having to provide any kind of PACA notice on their own behalf, and can rely on the conduct of their agent in preserving the trust for their own (the agent's) benefit, for the preservation of their (the growers') benefit.

## I.    Significance of Plaintiffs' Status as a Grower

To be an eligible claimant under PACA, each plaintiff must, at a minimum, qualify as an unpaid "supplier, seller or an agent." Obviously, if plaintiffs are not among the beneficiaries named in the statute, then there would be no basis upon which to argue that the statute applied.  In recognition of this, plaintiffs have clarified that they are, in fact, unpaid suppliers of produce[3] within the meaning of the PACA trust provisions.  Pls.' Opp. to Defs.' Mot. to Dismiss at 5 (reciting allegations in complaint to the effect that plaintiffs grew and delivered sweet potatoes to Bissett). At first glance, this appears to require plaintiffs' compliance with the notice requirements applicable to suppliers and sellers of produce; however, plaintiffs contend that it does not, because Congress

---

[3] On the other hand, plaintiffs later state, in their supplemental brief, that "growers are not 'suppliers' under PACA." Pls.' Supp. Mem. Opposing Defs.' Mot. to Dismiss at 6.  Plaintiffs' briefs contain multiple inconsistencies like this, which reflect the uncomfortable duality of their position. Plaintiffs *must* be among the protected group of claimants to have any traction with their arguments, but they must simultaneously set themselves aside from that group because they failed to comply with the notice requirements applicable to it.

implicitly excepted "growers" from the obligation to preserve their own entitlement to the benefits of a PACA trust.  This exception is not articulated in the statute, but plaintiffs contend that it is necessarily implied, if the operation and effect of § 499e is to conform to Congressional intent, as expressed in PACA's legislative history.

Specifically, plaintiffs argue that while they are "suppliers" within the category of PACA beneficiaries, their favored status as "growers" excepts them from the notice requirements applicable to other claimants.  The basis for this, they explain, is that PACA's primary purpose is to "assure that proceeds from the sale of produce are paid to *produce growers* ahead of secured creditors." Pl's. Opp. to Defs.' Mot. to Dismiss at 7 (emphasis added).  Based on their interpretation of PACA's legislative history, "*growers* were intended to be the chief beneficiaries of the PACA trust."  Id. (emphasis added).  As plaintiffs note: "If the *grower-shipper* cannot realize any returns on the sale of the crop when due, he may not be able to survive.  Thus, where business failures or reorganizations occur on the part of buyers of their crop, the *growers* are usually the parties least able to withstand the losses and inevitable delays which result from such actions."  Id. (quoting H.R. Rep. No. 98-543 at 3 (emphasis added)).

A grower relying on a growers' agent like Bissett, plaintiffs argue, "is not required to, and cannot, give notice to preserve its trust rights," which is "why the regulations require the growers' agent [to] preserve the growers' PACA trust rights."  Id. at 12.  Their reasoning, and plaintiffs' interpretation of the notice provisions, is as follows:

> There are two (2) ways to give notice to preserve PACA trust rights – by invoice or by a trust notice – both of which envision a sale transaction at a price.  7 U.S.C. §§ 499e(c)(3) and (4).  To give the preservation notice by invoice, the PACA trust beneficiary must invoice or send a billing statement to a "buyer" containing the trust notice.  7 C.F.R. §§ 46.46(f)(3) and (4).  But growers do not send invoices or billing statements to their agents because they are not selling produce to their growers'

9

agents. Instead, the produce is delivered to the Debtor's warehouse facility in bulk, where, over a period of time, it is packed, shipped, and sold to buyers by the growers' agent on behalf of the growers. In this case, Debtor invoiced its buyers of the Growers' sweet potatoes, and preserved the Growers' PACA trust rights, which automatically arose at the time the Growers supplied the sweet potatoes to the Debtor ... by including the trust wording on its invoices .... Thus, a grower cannot, and is not required to, preserve its trust rights for produce supplied to a growers' agent since the grower does not invoice the agent and has not sold the product to the agent.[4]

The second method of trust preservation is to file a written "notice of intent to preserve trust benefits," which also must include the invoice price for each transaction. 7 U.S.C. § 499e(c)(3); 7 C.F.R. §§ 46.46(f)(1)(ii). Since there is no sale or invoice price from the grower to the agent when the agent receives the produce, a grower cannot give a trust notice to its agent.[5]

Id. at 12-13. Instead, plaintiffs contend, growers are expected and permitted by Congress to rely entirely on their growers' agents to give notice. Plaintiffs point to this language in the legislative history:

> In order to protect grower's rights to trust proceeds, the bill requires that the seller must notify the buyer within 30 days of the date on which the obligation to the grower is due. Under this provision, the growers' agent, who is the shipper, must notify the buyer that the grower has not been paid. Such shipper or agent cannot avoid this responsibility by placing a clause in his contract with the seller [i.e., the grower] absolving him of this obligation.

Pl's. Supp. Mem. at 5 (quoting H.R. Report No. 98-543, p. 6, 1984 U.S.C.C.A.N. 409-410 (emphasis added by plaintiff)). Plaintiffs insist that neither the operative statutes and regulations nor their

---

[4] Growers can be licensed, and those that are may give notice by the invoice method. See, e.g., Andrew Smith Co. v. Paul's Pak, Inc., 2009 WL 765687 (N.D. Ca. 2009) (licensed grower invoiced broker to which it supplied $3 million worth of lettuce). Further, the statues do not require a *sale* by the supplier, seller or agent: Rather, they must simply "transfer[] ownership, possession, or control of goods" to the commission merchant, dealer, or broker. 7 C.F.R. § 46.46(c)(1).

[5] The statute and regulations do not require an invoice price in a notice of intent. Section 499e(c)(3) requires that the written notice "set forth information in sufficient detail to identify the transaction subject to the trust." Regulation 46.46(f)(1)(ii) requires that the notice include information setting out the "date of the transaction, commodity, invoice price, and terms of payment (*if appropriate*)."

legislative history give any indication that growers must give notices to their growers' agents.  <u>Id.</u> at 2.  From this, plaintiffs conclude that "only those in the class of 'supplier, seller, or agent' are required to give a trust notice to those in the class of 'commission merchant, dealer, or broker,' *not growers*."  <u>Id.</u> at 5 (emphasis added).  They conclude:

> Since the foremost concern of Congress and the agency was to protect growers through the PACA trust, these legislative bodies surely would have told the growers, the persons they intended to protect, in no uncertain terms, that they had to file trust notices against their growers' agents to receive the proceeds of their products over secured lenders if that was intended as a requirement.  It is inconceivable that if this was to be a requirement for the protected class, it would not have been clearly stated in the statute, legislative history, or regulations.

<u>Id.</u> at 6.  While plaintiffs cite multiple cases establishing that Congress intended to benefit growers, that angle of its argument is not in dispute, and plaintiffs do not offer (nor did the court's research locate) a single case supportive of the conclusion plaintiffs ultimately draw, which in these proceedings boils down to 1) growers are not required to give notice to protect their PACA rights, and 2) must instead rely on their growers' agents to give notice to third parties on the growers' behalf, which enables growers to 3) assert those trust rights preserved by the growers' agent between itself and third parties, *for the growers' benefit and against their growers' agent*.

In response, defendants argue that plaintiffs are attempting to pick and choose from various aspects of the PACA scheme without a plausible basis for doing so beyond their need to have it both ways: to be a "supplier" in order to qualify for benefits, and to be something other than a supplier in order to justify their failure to give the required notice.  Defendants maintain that plaintiffs are unpaid produce suppliers required to give notice to protect their PACA rights just like any other supplier, and argue further that plaintiffs were not entitled to rely on defendant Bissett, as their growers' agent, to preserve plaintiffs' PACA rights *as against Bissett itself*.  The court agrees.

11

First, it is abundantly clear that growers – put another way, farmers – are included among the "suppliers, sellers, and agents" that PACA trusts are intended to protect.  The considerable body of case law pertaining to PACA is replete with examples of cases in which growers, in their capacity as unpaid suppliers or sellers, filed PACA notices giving notice of their intent to claim benefits under the trust.  Significantly, these cases do not discuss whether the grower should have given notice *at all*; rather, the issue is whether the growers gave notice *correctly*.  See  In re W.L. Bradley Co., Inc., 75 B.R. 505, 511 (Bankr. E.D. Pa. 1987) (rejecting debtor's argument that PACA's "only intended beneficiaries are growers of perishable agricultural commodities," and citing the same legislative history upon which plaintiffs rely, which clarifies that the amount "claimable against the trust *by a seller supplier, including a grower* will be the net amount due him after allowable deductions for expenses or advances"); see also, e.g., C&G Farms, 2011 WL 677487 *9 (not reaching issue of whether family farm grower gave *timely* PACA notice to its buyer because motions for summary judgment resolved on other grounds); AFCM, Inc. v. Elite Global Farming & Logistics, Inc., 2012 WL 1309168 *4 (N.D. Cal. 2012) (growers engaged in joint venture, for which one grower did not pay the other; unpaid grower gave written PACA notice, thus satisfying pleading requirements and surviving motion to dismiss); Andrew Smith Co. v. Paul's Pak, Inc., 2009 WL 765687 *5 (N.D. Cal. 2009) (grower provided invoice notice to the suppliers to whom it sold lettuce; court allowed motion to dismiss, with leave for grower to amend its complaint to attach invoices and allege sufficient facts to show that its notices contained the proper terms); Kingsburg Apple Packers Inc. v. Ballantine Produce Co., Inc., 2010 WL 653549 (E.D. Cal. 2010) (grower gave PACA notice but did so too late); Kingsburg Apple Packers Inc. v. Ballantine Produce Co., Inc., 2010 WL 529486 (E.D. Cal. 2010) (grower gave PACA notice too early; cannot "preserve" a not-yet-existent trust).

12

While plaintiffs make much of the fact that the term "growers" is defined, the court finds this to be of little import. So, too, are the terms "growers' agent," "dealer," and "shipper," but plaintiffs do not argue that inclusion of those definitions should be viewed as significant with respect to the PACA trust provisions. 7 C.F.R. §§ 46.2(q),(m), (o). And, if growers – *i.e.*, farmers, in layman's terms – are not among the suppliers and sellers specifically named as beneficiaries under the 499e, then who *are* these suppliers and sellers?

The court finds no indication that Congress both intended to exempt suppliers and sellers who are growers from the PACA notice requirement and failed to say so in the operative language of the statutes. Other courts don't think so either, as evidenced by the body of case law reflecting the widespread understanding among growers that they must file PACA notices, and among courts that their role is to assess the sufficiency of those notices, when challenged. See cases cited supra.

As one court explained on the heels of PACA's enactment, in an adversary proceeding concerning the existence of a PACA trust on proceeds from the defendant-growers' 1984 crops:

> On May 7, 1984, President Ronald Reagan signed an amendment to PACA giving *trust fund status to certain obligations of produce purchasers to produce growers.* Simply put, an obligation from a produce dealer to a produce grower that is not timely paid becomes a trust obligation of the dealer, prior to and superior to any lien or security interest in inventory held by the dealer's secured lender. *In order to qualify, the grower must file a notice of his claim of trust protection with the dealer and the Secretary of Agriculture within 30 days after payment was due.* At all times relevant the debtor was a commission merchant, dealer or broker under PACA, and the *defendant claimants were suppliers or sellers under PACA.*

St. Joseph Bank & Trust Co. v. DeBruyn Produce Co. (In re Prange Foods Corp.), 63 B.R. 211, 214 (Bankr. W.D. Mi. 1986) (emphasis added). Construing that early version of § 499e, which does not differ from the current version in any way material to this discussion, that court held that the statute "provides that in order to preserve his PACA trust benefits *an unpaid grower* must file a notice of

intent." Id. at 219 (emphasis added).  Significantly, that court, like others, simply used the term
"grower" as shorthand for the particular sort of supplier or seller before it, without discussion, which
usage is entirely consistent with the cases cited above and, this court believes, with Congress'
intentions.  The court determines that "growers," as defined in 7 C.F.R. § 46.2(p), are among the
class of "suppliers, sellers, and agents" referenced in 7 U.S.C. § 499e, and further that growers such
as plaintiffs are not, simply by reason of that status, exempted from the PACA notice requirements.

## II.    Requirement that Plaintiffs, as Growers, Give PACA Notice to their Growers' Agent

Plaintiffs contend that Bissett, as their growers' agent, was required to give notice to
Bissett's buyers, *on plaintiffs' behalf*.  Assuming for present purposes that Bissett did, through use
of the invoice method, preserve its *own* trust rights with respect to transactions it undertook with
those buyers, the question plaintiffs raise is whether Bissett also was required to, capable of, and in
fact did preserve *plaintiffs'* trust rights; and, further, whether plaintiffs may now assert those rights
*as against Bissett*.   Under any of the several scenarios and theories advanced by plaintiffs, it is
apparent that their claims must be dismissed due to their failure to provide PACA notice on their
own behalf.

Defendant Bissett aptly summarizes the three different scenarios in which a grower who uses
an agent may preserve its PACA trust rights, as follows:

> (1) if the grower engages a collect and remit agent, under 7 C.F.R. § 46.46(c)(2) the
> grower must give the agent written notice of its intent to preserve the benefits of the
> PACA trust; (2) if the grower engages a non-collect and remit agent, and the agent
> is responsible for invoicing the [commission merchant, dealer, or broker] customer
> on behalf of the grower, the customer is obligated to pay the grower, and under
> 7 C.F.R. § 46.46(d)(2) the agent must give the customer written notice of the
> grower's intent to preserve the benefits of the PACA trust against the customer; (3) if
> the grower engages a non-collect and remit agent, and the agent is not responsible
> for invoicing the customer on behalf of the grower, the grower is responsible for

invoicing the customer and must give written notice of its intent to preserve the PACA trust against the customer.

Debtor's Resp. to Order regarding Mot. to Dismiss at 7.

With respect to the first option, where growers rely on a licensed agent (like Bissett) to collect and remit the sums due to them, an agent is required to preserve the grower's trust rights in those sums, but the grower – *i.e.*, the principal – is required to give notice to that agent to preserve the grower's trust rights against it:

> In the event an agent having a fiduciary duty to collect funds resulting from the sale or consignment of produce and remit such funds to its principal fails to perform the duty of preserving its principal's right to trust benefits, it may be held liable to the principal for damages. *A principal employing a collect and remit agent must preserve its rights to trust benefits against such agent by filing appropriate notices with the agent.*

§ 46.46(c)(2). Plaintiffs filed no such notice, and thus cannot rely on this section. The third option appears to not apply, because those few facts before the court establish that Bissett did invoice its customers; in addition, such an arrangement contemplates a grower's direct invoicing of its customers.

For the second option, § 46.46(d)(2) provides: "Agents who sell perishable agricultural commodities on behalf of a principal are required to preserve the principal's rights as a trust beneficiary as set forth in 46.2(z), (aa), and paragraphs (d), (f), and (g) of this section. Any act or omission which is inconsistent with this responsibility, including failure to give timely notice of intent to preserve trust benefits, is unlawful, and in violation section 2 of the Act." Id.; see Onions Etc., 2010 WL 2598392 at*4 ("Section 46.46(d)(2) imposes a duty on an agent to maintain the principal's rights as a PACA trust beneficiary.").

15

This section, however, has been interpreted to work in conjunction with 7 U.S.C. § 499e, and not as an alternative to it. In <u>In re Enoch Packing Co., Inc.</u>, 386 Fed. Appx. 611, 2010 WL 2780984 (9th Cir. 2010), the Court of Appeals for the Ninth Circuit concluded that while the plaintiff growers, the Flores, were "correct that regulations state that an agent has the duty to preserve its principal's right to trust benefits.... However, *the principal must first preserve its rights to trust benefits under § 499e*." Id. at*1 (internal quotations and citations omitted). The court found that the plaintiffs' agent's compliance with 7 U.S.C. § 499e(c)(4), which is the invoice method of notice used by Bissett, was

> insufficient to preserve the Floreses' rights to PACA trust benefits where the Floreses failed to comply with § 499e(c)(3). We have consistently required strict compliance with the PACA trust provisions.... As an entity not licensed under PACA, the Floreses' sole method of preserving their trust benefits was to give notice pursuant to § 499e(c)(3).

<u>Id.</u> In that case, as in this one, the plaintiffs did not do so.

Unfortunately for the plaintiffs, there is substantial authority in accord with the <u>Enoch</u> court's adherence to this bottom line: An unpaid supplier, seller, or agent involved in those early-stage transactions must give notice of their intent to preserve the benefits *on their own behalf*. <u>See</u> § 499e(c)(3) ("supplier, seller or agent shall lose the benefits of such trust unless *such person* has given written notice"). The court finds this view persuasive, and plaintiffs offer no authority to contradict it.

## CONCLUSION

Because the uncontested facts establish that plaintiffs did not at any time provide notice of their intent to preserve the benefits of a PACA trust to Bissett or to any other party, and such notice

16

was a required element of plaintiffs' PACA claims, plaintiffs have failed to state claims upon which relief may be granted.  For the foregoing reasons, the motions to dismiss are **ALLOWED** and the adversary proceeding against Bisset and AgCarolina is **DISMISSED**.

     **SO ORDERED.**

<strong>END OF DOCUMENT</strong>