IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO.  5:14-CV-451-FL

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BISSETT PRODUCE, INC., | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| DEREK & MATTHEW BISSETTE | ) | |
| FARMS; BRANTLEY FARMS, INC.; | ) | |
| ERW FARMS, LLC; NICHOLS & | ) | |
| NICHOLS FARMS, INC.; and ROCK | ) | |
| RIDGE FARMS PARTNERSHIP, | ) | |
| | ) | ORDER |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| BISSETT PRODUCE, INC. and | ) | |
| AGCAROLINA FARM CREDIT, | ) | |
| ACA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on appeal by plaintiffs, from an order of the United States

Bankruptcy Court dismissing their adversary complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim upon which relief can be granted.  Derek & Matthew Bissette

Farms v. Bissett Produce, Inc. (In re Bissett Produce, Inc.), 512 B.R. 528  (Bankr. E.D.N.C. 2014).

The issues raised have been fully briefed and are ripe for ruling.  For the reasons discussed more

specifically herein, the court affirms the bankruptcy court's order of dismissal.

## STATEMENT OF THE CASE

Defendant Bissett Produce, Incorporated ("Bissett Produce"), a licensed broker of perishable agricultural goods, filed a bankruptcy petition, pursuant to Chapter 11 of the United States Bankruptcy Code, on February 4, 2013.  Thereafter, on June 6, 2013, plaintiffs Derek & Matthew Bissette Farms; Brantley Farms, Incorporated; ERW Farms, LLC; Nichols & Nichols Farms, Incorporated; and Rock Ridge Farms Partnership, all sweet potato growers that previously had employed defendant Bissett Produce as their agent, filed an adversary complaint in the bankruptcy court pursuant to the Perishable Agricultural Commodities Act ("PACA"), codified at 7 U.S.C. §§ 499a-s.  Plaintiffs assert their entitlement to funds secured by defendant from the sale of sweet potatoes on plaintiffs' behalf.  Plaintiffs seek enforcement of a statutory PACA trust in their favor; injunctive relief, prohibiting transfer of the trust assets or proceeds of the trust assets; declaratory relief, establishing their entitlement to the trust assets and proceeds gained therefrom; as well as interest on the trust assets and proceeds and attorney's fees.  In addition, plaintiffs also seek relief from a security interest in the trust assets and their proceeds granted to defendant AgCarolina Farm Credit, ACA ("Farm Credit"), a cooperative lending institution, by defendant Bissett Produce.

On June 28, 2013, defendants Bissett Produce and Farm Credit filed motions to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (DE 2-3 & -4).  In their motions, defendants argue plaintiffs have not pleaded a prima facie case under PACA.  In particular, defendants assert that plaintiffs did not provide defendant Bissett Produce with the statutorily required notice sufficient to perfect plaintiffs' claim to the trust assets.[1]   Plaintiffs respond and argue, as pertinent here, that they are entitled to

---

[1]        Both defendants filed a motion to dismiss.  However, defendant Farm Credit's motion merely incorporated by reference the arguments contained in defendant Bissett Produce's motion.

2

a special status under PACA, whereby no notice is required.  (DE 2-5).  In addition, plaintiffs argue that the statute, by its terms, does not require them to provide defendant Bissett Produce with notice, where defendant Bissett Produce was acting as plaintiffs' agent.

The bankruptcy court held a hearing on the issues raised in defendants' motions to dismiss on November 5, 2013.  Thereafter, on March 26, 2014, the parties submitted supplemental briefing on the issues raised at the hearing.  On May 21, 2014, the bankruptcy court issued an order granting defendants' motions to dismiss.  In its order, the court rejected plaintiffs' contention of entitlement to a special status relieving them of the notice requirement.  The court examined the Congressional Record and concluded that Congress had not intended to create any special exemption from the general terms of the statute.  The bankruptcy court also held that, in any event, PACA required plaintiffs to provide defendant Bissett Produce with notice, even though defendant Bissett Produce was acting as plaintiffs' agent.  The court reasoned that, despite defendant Bissett Produce's status as an agent, plaintiffs' were still required to perfect their own PACA rights as against it, because defendant Bissett Produce was also acting as a reseller of plaintiffs' produce.  Because plaintiffs provided defendant Bissett Produce with no such notice, the bankruptcy court dismissed the adversary complaint.  Plaintiffs' appeal followed.

**STATEMENT OF FACTS**

Plaintiffs are commercial farmers engaged in the business of raising and selling sweet potatoes. (Compl. ¶¶5,9).  Defendant Bissett Produce sold and distributed produce and was licensed by the Secretary of Agriculture to do so.  (Id. ¶¶6,8).

In the years 2010 and 2011, defendant Bissett Produce acted as plaintiffs' agent, whereby it received wholesale quantities of sweet potatoes from plaintiffs for resale.  (Id. ¶9).  When defendant Bissett Produce sold the sweet potatoes to a third party, it would package and ship the produce, then it would invoice the purchaser on plaintiffs' behalf.  (Id. ¶¶13-14). Thereafter, defendant Bissett Produce collected the proceeds, and distributed them to plaintiffs.  (Id. ¶15).

At the time of its bankruptcy petition, defendant Bissett Produce owed plaintiffs in excess of $1,000,000.00 on sweet potatoes supplied by plaintiffs, for which defendant Bissett Produce had been compensated by the buyers.  (Id. ¶18).  In addition, prior to its bankruptcy petition, defendant Bissett Produce entered into a secured lending relationship with defendant Farm Credit, whereby defendant Farm Credit obtained a security interest in plaintiffs' sweet potatoes and the proceeds received therefrom.  (Id. ¶19).

**DISCUSSION**

**A.    Standard of Review**

This court has jurisdiction pursuant to 28 U.S.C. § 157(c)(1) to review the bankruptcy court's proposed findings of fact and conclusions of law.  This court "shall make a de novo review upon the record . . . of any portion of the bankruptcy judge's findings of fact or conclusions of law to which

specific written objection has been made." Fed. R. Bankr. P. 9033(d); see also Humboldt Express, Inc. v. Wise Co. (In re Apex Express Corp.), 190 F.3d 624, 630 (4th Cir. 1999) (de novo standard applies to both findings of fact and conclusions of law). This court "may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions." Fed. R. Bankr. P. 9033(d).

As noted, the bankruptcy court denied plaintiffs' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7012(b). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a

cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citations omitted).

**B.      Analysis**

      **1.      Statutory Background**

      PACA was enacted in 1930 to "suppress unfair and fraudulent business practices in the marketing of perishable commodities. Nickey Gregory Co., LLC v. AgriCap, LLC, 597 F.3d 591, 594 (4th Cir. 2010).   In 1984, the statute was amended to provide "unique credit protection to sellers of perishable agricultural commodities." Id.   In particular, finding that sellers of such commodities often were required to become unsecured creditors of their purchasers, and further finding that sellers were often unable to verify the purchaser's credit as a result of the seller's need to move quickly their inventories, Congress enacted PACA to give this vulnerable class of sellers a first-priority security interest in their wares. Id. at 594-95.  The right created by PACA is superior to all other security interests and is enforced as a trust.  7 U.S.C. § 499e(c); Nickey Gregory, 597 F.3d at 595.

      The PACA trust inures to the benefit of the unpaid seller on (1) the perishable commodities sold; (2) inventory or products derived therefrom; and (3) the proceeds of all inventory or products. See 7 U.S.C. § 499e(c)(1)-(2).   It is created when a "seller [or] supplier," or the "agent" of a seller or supplier, known as the beneficiary, "transfers ownership, possession, or control of goods to a commission merchant, dealer, or broker," also known as a PACA trustee. 7 C.F.R. § 46.46(c)(1). Once the trust is created, the beneficiary of the PACA trust must perfect its interest by providing the trustee with "written notice of intent to preserve the benefit of the trust" within the time allotted by the statute.  7 U.S.C. § 499e(c)(3).  The notice "must be in writing [and] must include the statement

6

that it is a notice of intent to preserve trust benefits." 7 C.F.R. § 46.46(f)(1).  In addition, the notice must also contain:

> (I)    The names and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable[;]
>
> (ii)   The date of the transaction, commodity, invoice price, and terms of payment (if appropriate)[;]
>
> (iii)  The date of receipt of notice that a payment instrument has been dishonored (if appropriate)[;] and
>
> (iv)   The amount past due and unpaid.

Id.  Once perfected, the PACA trust remains in effect until the beneficiary is paid in full. Id. § 46.46(c)(1).

> **2.    Plaintiffs' Arguments**

It is undisputed that plaintiffs gave defendant Bissett Produce no notice of their intent to perfect their PACA trust rights.  As noted previously, a PACA trust may be enforced only if appropriate notice has been given.  However, plaintiffs argue the notice requirement does not apply to them.  In particular, plaintiffs argue that they are neither "sellers" nor "suppliers," but rather fall into a special class of "growers," which they suggest encompasses anyone selling produce through an agent.[2] As a result of their claimed status, plaintiffs contend they are exempt from the notice requirement.

Plaintiffs' argument is not supported by the text of the statute.  With rare exception, statutes are given their plain meaning.  See In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004).  "[U]nless there is some ambiguity in the language of a statute, a court's analysis must end with the

---

[2]    A "grower" is defined by the regulations as "any person who raises produce for marketing." 7 C.F.R. § 46.2(q).  However, "seller" and "supplier" are undefined.

7

statute's plain language." Hillman v. I.R.S., 263 F.3d 338, 342 (4th Cir. 2001). As an initial matter, "growers" are not a protected class within the ambit of the statute. See 7 U.S.C. § 499e. The statute's coverage is limited to "suppliers" or "sellers." Id. In addition, assuming plaintiffs qualify as either "suppliers" or "sellers," the text of the statute contains no exception through which plaintiffs may claim they are entitled to enforce a PACA trust without first providing notice.

Plaintiffs also argue that there is no need for them to fall within one of the statutorily enumerated categories, because defendant Bissett Produce was required to perfect plaintiffs' trust rights against third-party buyers, and thus there is no need for plaintiffs to perfect their own rights against defendant Bissett Produce. Plaintiffs' argument assumes too much. An agent is required merely to preserve its principal's rights against third-party buyers. See 7 C.F.R. § 46.46(c)(2). It necessarily does not follow that notice given by an agent to third-party buyers preserves the principal's rights against its agent. Plaintiffs' cite no cases in support of their interpretation, and the court is again unwilling to add language to the statute.

Plaintiffs next argue that, even if they also qualify as "suppliers" or "sellers," Congress did not intend that "growers," as defined by plaintiffs, provide their agents with notice, because effective notice as between a principal-grower and agent is impossible. In support of this argument, plaintiffs direct the court to the statute's legislative history, which, plaintiffs contend, compels the conclusion that growers are not required to give notice to their agents.

There are "narrow exceptions to application of the statute's plain language." In re Sunterra, 361 F.2d at 265. Legislative history may be used to create an exception to a statute's plain text only where "literal application of the statutory language at issue produces an outcome that is demonstrably at odds with the clearly expressed congressional intent." Sigmon Coal Co. v. Apfel,

8

226 F.3d 291, 304 (4th Cir. 2000), aff'd sub nom. Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002). The instances in which this exception applies "are, and should be, exceptionally rare." Hillman, 263 F.3d at 342 (internal citations and quotations omitted). In light of this clear circuit precedent, plaintiffs' argument cannot prevail.

Plaintiffs argue that Congress' primary intent was to protect the grower's right to trust proceeds. In support of their argument plaintiffs cite language from a House Report stating "In order to protect the grower's rights to trust proceeds, the bill requires that the seller must notify the buyer within 30 days of the date on which the obligation to the grower is due." H.R. No. 98-543, at 6 (1983).

Even assuming Congress' primary intent was to protect growers' rights to trust proceeds, it is not clear the statute, in operation, is at odds with that intent. Plaintiffs contend a grower's right to the trust proceeds is jeopardized by requiring it to provide notice to its agent, as growers do not charge their agents a price at the time the agent takes possession of the produce, and therefore, cannot give effective notice where the applicable regulation requires a price term be included. See 7 U.S.C. § 499e(c)(3) & (4) (discussing methods of giving notice); see also 7 C.F.R. § 46.46(f) (discussing requirements for notice to be effective).

Plaintiffs' contention that purchase price is required to give effective notice under PACA is not true. The regulation requires commodity price only be included "if appropriate." 7 C.F.R. § 46.46(f)(1)(ii). As plaintiffs did not sell their produce to defendant Bissett Produce, a price term was inappropriate. However, that does not mean, as plaintiffs suggest, providing notice to defendant Bissett Produce was impossible. In any event, the court's conclusion also is bolstered by PACA's

applicability to all "transactions" in perishable agricultural goods, rather than merely "sales." <u>See</u> 7 U.S.C. § 499e(c)(2).

In sum, as the statute provides an avenue for growers to protect their interest in their perishable agricultural commodities, the court cannot conclude that application of the statute as written is "demonstrably at odds with clearly expressed congressional intent." Accordingly, the plain language of the statute must control. Plaintiffs are either supplier or seller and are not exempt from the notice requirement. As plaintiffs have not given notice, defendants' motion to dismiss must be granted.

Finally, plaintiffs argue "agents" are not entitled to notice under the plain language of the statute, because the statute requires agents *give* notice, and thus, defendant, as plaintiffs' agent, was not entitled to *receive* notice.[3] This argument too must fail.

In particular, plaintiffs contend that § 499e(c) creates two categories of players involved in a PACA transaction, "notice givers," i.e., "suppliers, sellers, [and] agents;" and "notice receivers," i.e., "commission merchant[s], dealer[s], [and] broker[s]." Plaintiffs then argue that, because "agent" is listed as a "notice giver," suppliers or seller are never required to provide their agent with notice to preserve their PACA trust rights against the agent. In addition, plaintiffs suggest there is no set of facts whereby an "agent" may also be a "commission merchant, broker, or dealer."

As relevant here, "agent" means "any person operating at a shipping point who sells or distributes produce in commerce for or on behalf of growers." 7 C.F.R. § 46.2(q). However, neither PACA nor the applicable regulations limit an entity who acts as an "agent" from also operating as

---

[3]    In addition, plaintiffs make much of the fact that the regulations refer to beneficiaries and growers separately. However, the court does not find this distinction persuasive as the plain language of the statute clearly states a PACA trust may only be enforced for trust beneficiaries, defined as "suppliers, sellers, or agents." <u>See</u> 7 U.S.C. § 499e.

a "commission merchant, dealer, or broker." For example, a "broker" is an entity "engaged in the business of negotiating sales . . . of produce in commerce for or on behalf of the vendor" 7 C.F.R. § 46.2(n). In addition, the regulations specifically contemplate that agents will also serve as brokers in certain circumstances, as the definition of "broker" explicitly excludes "agent[s] negotiating sales for or on behalf of the vendor . . . if the only sales of such commodities negotiated by such person" are for a certain type of perishable commodity, not relevant here. See id.[4] Thus, because defendant Bissett Produce sold plaintiffs' sweet potatoes in commerce to third party buyers on plaintiffs' behalf, thereby acting as a "broker," it is entitled to notice before a PACA trust may be enforced against it.

Plaintiffs' suggest defendant Bissett Produce cannot be a "broker," as it does not meet the definition of broker set forth in 7 C.F.R. § 46.27. The court disagrees. Section 46.27 merely outlines two general classes of "brokers," those working on behalf of the buyer and those working on behalf of the seller, and endeavors to explain their "usual" course of operation. Id. § 46.27. It does not provide an exclusive definition of "broker." See id. In sum, as defendant Bissett Produce fits the definition of "broker" set forth in 7 C.F.R. § 46.2, plaintiffs were required to provide notice.

---

[4]        The regulation reads:

> Broker means any person engaged in the business of negotiating sales and purchases of produce in commerce for or on behalf of the vendor or the purchaser, respectively, except that no person shall be deemed to be a "broker" within the meaning of the Act if such person is an independent agent negotiating sales for or on behalf of the vendor and if the only sales of such commodities negotiated by such person are sales of frozen fruits and vegetables having an invoice value not in excess of $230,000 in any calendar year.

7 C.F.R. 46.2(n). Although plaintiffs contend that defendant Bissett Produce is a "grower's agent," that contention does not affect the court's analysis. In particular, the regulation refers only to excepting a particular type of *independent* agent, not a grower's agent.

11

In any event, defendant Bisset Produce must qualify as a "commission merchant, dealer, or broker" by virtue of its status as a PACA licensee. Plaintiffs stipulate defendant Bissett Produce is a PACA licensee. (Compl. ¶23). Accordingly, defendant Bissett Produce also must qualify as a "commission merchant, dealer, or broker," as licenses are issued only to entities falling within those categories. See 7 U.S.C. § 499c, d; see also Marvin Tragash Co., Inc. v. U.S. Dep't of Agric., 524 F.2d 1255, 1258 (5th Cir. 1975).[5]

## CONCLUSION

Upon *de novo* review of the conclusions of law in the bankruptcy court's May 21, 2014, order, this court AFFIRMS the bankruptcy court's decision for the reasons discussed herein. Defendants' motion to dismiss for failure to state a claim upon which relief can be granted is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 2nd day of February, 2015.

LOUISE W. FLANAGAN
United States District Judge

---

[5] While defendant Bissett Produce argues it qualifies as a commission merchant, the court may not draw that conclusion from the facts alleged in the complaint alone. Specifically, section 499a defines "commission merchant" as "any person engaged in the business of receiving in *interstate or foreign commerce* any perishable agricultural commodity for sale . . . on behalf of another." 7 U.S.C. § 499a(b)(5) (emphasis added). As defendant Bissett Produce is a North Carolina entity, and all plaintiffs are North Carolina business associations as well, there is no indication from the complaint alone that defendant Bissett Produce receives perishable commodities in interstate commerce as required by the statute.